IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CT-3088-FL

| | | |
|---|---|---|
| ROBERT S. BALLARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| LORA ANDREWS; BRANDON CONNOR; | ) | |
| AUNDRA D. DEAN; ANDY WOOD; | ) | |
| NATHANIEL BANNERMAN; MARIA | ) | |
| MAGANA; JENNIFER BLACKMON; | ) | |
| BRENDA SCOTT, Assistant Manager of | ) | |
| Blue Unit; FRANCES WASHINGTON, | ) | |
| Unit Manager of Blue Unit; and SANDRA | ) | |
| LANGSTON, | ) | |
| | ) | |
| Defendants.[1] | ) | |

The matter now comes before the court on defendants' motion for summary judgment (DE 73) pursuant to Federal Rule of Civil Procedure 56. The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendants' motion.

### STATEMENT OF THE CASE

On April 9, 2015, plaintiff, a state inmate, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging defendants were deliberately indifferent to his serious medical needs and retaliated against him for filing this lawsuit. On July 15, 2015, the court granted plaintiff's motion to amend, denied his request for a preliminary injunction, and ordered plaintiff to particularize his claims.

---

[1] The court constructively has amended the caption of this order to reflect dismissal of previously-named defendants, as set forth in more detail herein.

Plaintiff responded as directed (DE 14), and, on December 3, 2015, the court conducted a frivolity review, dismissing plaintiff's retaliation claim without prejudice but continuing management of plaintiff's deliberate indifference claim (DE 16).

Although plaintiff's deliberate indifference claim survived frivolity review, he did not provide complete names for each defendant. The North Carolina Attorney General ("NCAG") then made a good faith effort to identify the unidentified defendants. (See DE 40 at 1-2). On January 29, 2016, the NCAG filed under seal a response which, *inter alia*, identified formerly-named defendants "CO Garret" and "CO A. Smith" as Robert Garrett and Isaac Smith (DE 19). The court then entered a text order amending the docket to reflect the inclusion of Robert Garrett ("Garrett") and Isaac Smith ("Smith") (DE 21, 22).

On April 29, 2017, plaintiff notified that court that "Officer Garret is not a Robert Garrett . . . [and] Isaac Smith . . . is not the named Correctional Officer A. Smith." (Mot. (DE 39) at 1). As a result, plaintiff filed numerous motions with the court requesting discovery enabling him to identify these defendants. (See DE 39, 44). Defendants responded, indicating that they had already provided plaintiff with discovery to assist him in identifying these individuals (DE 63). Defense counsel also informed that court that she had independently reviewed plaintiff's medical records and was unable to identify either Garrett or Smith (DE 45). The court concluded that plaintiff, defendants, and the NCAG had all made good faith efforts to identify Garrett and Smith and were unable to do so. (See DE 88 at 1-3). Thus, the court found that Garrett and Smith were John Doe defendants, and dismissed them from this action without prejudice. Id. The court also allowed defendants' request for the entry of a protective order pending the resolution of defendants' dispositive motions. Id. at 4-5.

Defendants filed the instant motion for summary judgment on October 24, 2016 (DE 73). In support thereof, defendants attached the following: (1) affidavit of Finesse Couch (non-defendant), executive director of North Carolina inmate grievance resolution board with relevant grievances; (2) affidavit of Dennis Daniels (non-defendant), Facility Administrator at Maury Correctional Institution ("Maury") with relevant disciplinary records and operating procedures; (3) affidavit of defendant Lora Andrews ("Andrews"), sergeant; (4) affidavit of defendant Aundra Dean ("Dean"), correctional officer; (5) affidavit of defendant Andy Wood ("Wood"), correctional officer; (6) affidavit of Marvin Casino (non-defendant), nurse supervisor at Maury, along with disciplinary history, medical policies, and medication and medical records; (7) affidavit of defendant Jennifer Blackmon ("Blackmon"), with exhibits; (8) affidavit of defendant Maria Magana, nurse; (9) affidavit of defendant Sandra Langston ("Langston"), correctional healthcare nurse assistant, along with relevant medication records. (See DE 76).

Plaintiff requested an extension of time to respond, (DE 78), which was allowed (DE 79). On January 5, 2017, plaintiff filed a second request for an extension of time (DE 83), which was also granted (DE 85). However, plaintiff was notified that any further extensions of time would be disfavored. Plaintiff filed a third motion for an extension of time on January 17, 2017 (DE 86). In support of this motion, plaintiff alleged that he needed an extension of time because his health was severely deteriorating, and as a result he had been transferred to Central Prison Hospital. The court found this constituted exceptional circumstances and granted plaintiff a third extension of time (DE 88). However, plaintiff was reminded that any further extensions of time would be strongly disfavored. Furthermore, defendants were ordered to respond if plaintiff filed any further extensions

of time. Defendants were instructed that any response should include an update on plaintiff's location and health status.

Plaintiff filed a fourth motion for an extension of time to respond to defendants' motion for summary judgment on February 27, 2017, alleging exceptional circumstances (DE 90). Defendants responded, as instructed (DE 91), attaching the affidavit of Joy Jones, a registered nurse employed by the North Carolina Department of Public Safety ("DPS"). (Jones Aff. (DE 91-1)). Jones' affidavit indicated that exceptional circumstances did not exist, and plaintiff's request for an extension of time was denied (DE 94). Moreover, plaintiff was admonished that if any of his future filings included intentionally misleading statements, he could be sanctioned with the dismissal of his claims.

Plaintiff then filed a timely response on April 26, 2017. In opposition to summary judgment, attached to his response, plaintiff filed copies of correspondence sent by plaintiff to certain defendants and other prison officials; and a medication administration record. (See DE 95). Defendants replied on May 2, 2017.

**STATEMENT OF FACTS**

The facts viewed in light most favorable to plaintiff may be summarized as follows. Plaintiff's claims are centered on plaintiff's assertion that defendants delayed his receipt of prescribed narcotic pain medication. (See, e.g., Am. Compl. (DE 13), p. 2). Specifically, plaintiff alleges he was not provided his pain medication in a timely manner on the following dates: February 27, 2015, March 10, 2015, March 17-18, 2015, March 23-24, 2015, and April 1 or 2, 2015.

Plaintiff currently is incarcerated based on his conviction for attempted trafficking of opium and heroin. (See Daniels Aff. (DE 76-2) ¶ 11). He has received numerous disciplinary infractions,

including infractions for threatening prison staff, disobeying orders, and faking illness. (Id. ¶ 12). Likewise, plaintiff has a history of demanding medication before his prescribed dosage was due. (Id. ¶ 13). Plaintiff also has a history of becoming belligerent when his requests for unauthorized medication were denied. (Id. ¶¶ 14-15).

At the times relevant to his complaint, plaintiff was housed at Maury in the "Blue Unit," which houses inmates with chronic medical problems. (Id. ¶¶ 17-18). Plaintiff has been diagnosed with degenerative disc disease and has a prescription for Percocet, which is a narcotic drug. (Am. Compl. (DE 13) 2; Casino Aff. (DE 76-6) ¶ 31). Plaintiff's prescription initially called for him to take Percocet every four hours. (Casino Aff. (DE 76-6) ¶ 32). With regard to the time period between February 27, 2015 and March 24, 2015, plaintiff's medical records indicate that he received his Percocet six times per day at intervals of approximately four hours. (Id. ¶¶ 38-45). On March 31, 2015, plaintiff was transported to the emergency room based on complaints of chest pain. (Id. ¶¶ 47-48). While he was at the hospital, plaintiff's Percocet prescription was altered. (Id. ¶ 52). Plaintiff returned to Maury at 9:32 p.m. on April 1, 2015, and his Percocet was administered at 10:48 p.m. (Id. ¶ 51). On April 2, 2015, in accordance with his new prescription, plaintiff received four doses of Percocet at intervals of approximately six hours. (Id. ¶¶ 51-53). There is no medical documentation that plaintiff suffered any medical problems as a result of missed or delayed medication. (Blackmon Aff. (DE 76-7) ¶ 27).

# DISCUSSION

A.   Motion for Summary Judgment

   1.   Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

   2.   Analysis

Defendants raise the affirmative defense that plaintiff failed to exhaust his administrative remedies. Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing an action under 42 U.S.C. § 1983 concerning his confinement. Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1856 (2016) ("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."); Woodford v. Ngo, 548 U.S. 81, 83-85 (2006); see Jones v. Bock, 549 U.S. 199, 217 (2007) ("failure to exhaust is an affirmative defense under [42 U.S.C. § 1997e]"); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005). The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until

such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford, 548 U.S. at 84. Exhaustion is mandatory. Woodford, 548 U.S. at 85; Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."); Anderson, 407 F.3d at 677. A prisoner must exhaust his administrative remedies even if the relief requested is not available under the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). "[U]nexhausted claims cannot be brought in court." Jones, 549 U.S. at 211.

Here, the record indicates that plaintiff fully exhausted at least one grievance regarding the delayed receipt of his pain medication before the filing of the instant complaint. (Couch Aff. (DE 76-1) ¶ 8. To satisfy the exhaustion requirement, grievances must be sufficient in detail to alert the prison to the nature of the wrong for which redress is sought. See Moore v. Bennette, 517 F.3d 717, 726 (4th Cir. 2008); Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002). Likewise, "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievance." Bock, 549 U.S. at 219. In this posture, the court declines to dismiss plaintiff's claims based on an alleged failure to exhaust.

However, plaintiff's claims fail on the merits. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was <u>objectively</u> sufficiently serious"–and the second prong

7

is subjective–the prisoner must show that "subjectively the officials act[ed] with a sufficiently culpable state of mind." Id. (quotations omitted).

Assuming without deciding that plaintiff is able to satisfy the objective prong of the Eighth Amendment test, the court focuses on the subjective prong–whether defendants acted with deliberate indifference to plaintiff's serious medical needs. "[D]eliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). An inmate is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998). In determining whether a prison official is deliberately indifferent to a prisoner's serious medical needs, the court generally may rely on medical records concerning examination and treatment of the inmate. See Bennett v. Reed, 534 F. Supp. 83, 87 (E.D.N.C. 1981), aff'd, 676 F.2d 690 (4th Cir. 1982); see also, Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment.").

Here, prison officials have taken steps to manage the pain related to plaintiff's degenerative disc disease, and plaintiff received either four or six doses of Percocet per day. (Casino Aff. (DE 76-6) ¶¶ 32-53). While plaintiff's complaint and amended complaint are unclear as to whether he

8

alleges delay of treatment or denial of treatment, in his response to this motion, plaintiff states that he consistently received his pain medication. (Pl. Resp. (DE 95) at 1). Thus, it is undisputed that plaintiff's pain is being managed, and plaintiff's claim reflects a disagreement with the specifics and timing of his pain management regimen. However, plaintiff does not have a constitutional right to be prescribed a specific pain management regimen. See Russell, 528 F.2d at 318-19; see, e.g., Ballard v. Daniels, No. 5:16-CT-3012-BO, 2017 WL 945850, at *5 (E.D.N.C. Mar. 10, 2017) ("A prisoner has no right to be prescribed a particular medication for pain.").

Accordingly, the decision by prison officials to reduce the number of doses plaintiff received per day does not state a deliberate indifference claim.[2] See Johnson, 145 F.3d at 169; see, e.g., Baker v. Stevenson, 605 F. App'x 514, 520 (6th Cir. 2015) (upholding the dismissal of a deliberate indifference claim brought by an inmate who was denied access to opiate medications based on his history of substance abuse); Cassell v. Dawkins, No. 5:10CV69–03–MU, 2010 WL 2266972, at *2 (W.D.N.C. June 3, 2010) (finding no deliberate indifference where the physician took the inmate off at least one highly addictive narcotic medication and put him on another pain medication) (citations omitted), aff'd, 397 F. App'x 849 (4th Cir. 2010). At best, plaintiff describes potentially negligent delays in distributing his pain medication.[3] However, plaintiff's allegations of negligence

---

[2] Moreover, it does not appear that defendants were even involved in the decision to reduce plaintiff's daily doses of Percocet. (See, e.g., (Casino Aff. (DE 76-6) ¶ 19). Indeed, defendants Andrews, Conner, Dean, Garrett, Wood, Bannerman, Scott, and Washington are not healthcare providers and were not responsible for plaintiff's medical treatment. (See, e.g., Daniels Aff. (DE 72-2) ¶¶ 10, 21). As non-medical prison personnel, these defendants were entitled to rely on the expertise of health care providers with respect to the healthcare provided plaintiff. See Iko, 535 F.3d at 242 ("If a prisoner is under the care of medical experts ..., a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.") (quotations omitted); Lee v. Young, 533 F.3d 505, 511 (7th Cir. 2008) ("[I]n determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals."). Accordingly, summary judgment as to plaintiff's claims against Andrews, Conner, Dean, Garrett, Wood, Bannerman, Scott, and Washington is warranted for that additional reason.

[3] Even plaintiff's allegation of negligence is not supported by the record, as plaintiff's medical records indicate that any delays were *de minimis* at best. (See, e.g., Casino Aff. (DE 76-6) ¶¶ 37-53).

9

are not actionable. Estelle, 429 U.S. at 105-106; Johnson, 145 F.3d at 168; see, e.g., Sprinkle v. Barksdale, No. 7:08CV00430, 2009 WL 5173408, at *10 (W.D. Va. Dec. 30, 2009) ("If occasionally, [defendants] did not deliver a dose of medication as promptly as scheduled, brought a slightly incorrect dose, or allowed the prescription to run out, such isolated incidents, without more, support at most a claim of negligence, which is not actionable under § 1983."); Ballard, 2017 WL 945850, at *6 ("[D]elays in providing pain medication ranging from approximately forty-five (45) minutes to two (2) hours are not so unusually long as to provide a reasonable basis for an inference of diliberate [sic] indifference") (quotations omitted).

Indeed, even an occasional missed dosage of medication is insufficient to establish a constitutional violation. See, e.g., West v. Millen, 79 F. App'x 190, 194 (7th Cir. 2003) (an occasional missed dose of medication, without more, does not violate the Eight Amendment); McClary v. Lightsey, No. 5:14-CT-3039-FL, 2017 WL 829237, at *14 (E.D.N.C. Mar. 2, 2017), aff'd sub nom. McClary v. Lawson, No. 17-6313, 2017 WL 2829516 (4th Cir. June 30, 2017). The fact that the treatment plaintiff received may not have been effective does not give rise to a constitutional violation. See e.g., Russell, 528 F.2d at 319; see also, Johnson, 145 F.3d at 167 (finding that negligent acts are not sufficient to establish a constitutional violation). In sum, plaintiff has not presented any evidence to establish that any defendant acted with deliberate indifference to his back pain. See Matsushita, 475 U.S. at 587.

Because there is no evidence in the record that any defendant actually knew of and disregarded any medical need, plaintiff has not established the second prong of the Eighth Amendment test. Based upon the foregoing, the court finds that plaintiff fails to satisfy the subjective prong of the Eighth Amendment test, and is unable to establish a constitutional violation.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment (DE 73) is GRANTED, and plaintiff's claims are DISMISSED. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 29th day of August, 2017.

LOUISE W. FLANAGAN
United States District Judge